[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
On September 17, 1996, defendant-appellant, James Mitchell, was indicted on one count of rape, R.C. 2907.02(A)(2) and(B), and one count of aggravated burglary, R.C. 2911.11(A)(1) and/or (3). The indictment stemmed from acts allegedly committed on August 28, 1993. At his arraignment, appellant pled not guilty. He was ordered to submit to body exemplars for comparison with evidence gathered at the scene of the alleged rape and aggravated burglary.
Appellant was tried to a jury on June 11 through 13, 1997. At trial, the victim testified that early in the morning of August 28, 1993, her husband left their one-bedroom apartment to go golfing. After he left, the victim locked the door and returned to bed. All of the windows in the apartment were left open due to the heat. At approximately 7:00 that morning, a man apparently removed the screen from one of the windows and entered the apartment. He entered the victim's bedroom with his face concealed and raped her. He then allegedly fled with several items. The victim immediately reported the rape to the police and went to Robinson Memorial Hospital for an examination. The trace evidence collected from the victim's body and from items in and around a dumpster seventy-five yards from the victim's apartment was eventually matched to appellant. His fingerprints were found on papers and other items in and around the dumpster and his DNA was consistent with that found on the victim's underwear. Several police officers and evidence experts testified at the trial. Appellant did not testify.
The jury found appellant guilty on both counts. He was sentenced to ten to twenty-five years in prison on each count. The sentences were ordered to be served consecutively. He was also adjudged a sexual predator and notified he would be required to register as a sexual offender for the remainder of his life when he was released from prison.
Appellant timely appealed. He raises three assignments of error for our review:
 "[1.] The trial court committed plain error when it sentenced the defendant based on the sentencing law in effect prior to July 1, 1996, instead of the new law which took effect on July 1, 1996; the sentencing was in violation of the Ohio Constitution, R.C. 1.58 and due process.
 "[2.] The trial court abused its discretion in allowing prosecution witness Kay May to testify as an expert where she was not qualified as an expert as required by Evidence Rule 702(B).
 "[3.] The trial court committed an abuse of discretion where it admitted into evidence exhibits that were not properly authenticated and identified as required by Rule 901(A) of the Ohio Rules of Evidence."
For his first assignment of error, appellant claims the trial court erred in sentencing him under the more stringent sentencing requirements of pre-Senate Bill 2 law. He contends Senate Bill 2's more lenient scheme should be applied retroactively to those offenses committed before its effective date, July 1, 1996, despite its allegedly unconstitutional language to the contrary. The Supreme Court recently addressed this issue and upheld the constitutionality of Senate Bill 2's provision that it only applies to those offenses committed after the effective date.State v. Rush (1998) 83 Ohio St.3d 53. See, also, State v.Sprafka (Apr. 10, 1998), Lake App. No. 96-L-137, unreported, affirmed (1998), 83 Ohio St.3d 168. The offenses in this case were committed in August 1993, well before the enactment of Senate Bill 2. Thus, the trial court did not err in sentencing appellant under pre-Senate Bill 2 law.
The first assignment of error is without merit.
For his second assignment of error, appellant asserts the trial court erred in permitting the expert testimony of Kay May when the state did not sufficiently qualify her. We agree.
Evid.R. 702 requires an individual purporting to be an expert to be duly qualified before giving an expert opinion. The witness may be qualified by establishing she has "specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony * * *." Evid.R. 702(B). The rule does not specify the quantum of education or experience necessary to establish expertise in a given field. State v. Browne (June 27, 1997), Lake App. No. 96-L-121, unreported, at 10. Therefore, the determination must be made on a case-by-case basis.
The qualification of an expert is a preliminary question that is left to the sound discretion of the court. Scott v. Yates
(1994), 71 Ohio St.3d 219, 221. We will not reverse a lower tribunal's decision to qualify an individual as an expert unless it is shown that there was an abuse of discretion. Id.
Kay May was called to testify regarding DNA evidence left at the scene in comparison to a sample provided by appellant. She testified that she has been a member of the Trace Evidence Department of the Cuyahoga County Coroner's Officer for seven years, working chiefly with blood. She attended the College of Wooster, the University of Michigan, the State University of South Dakota, and has a Bachelor of Science degree in Medical Technology. She also testified that she has worked in various hospital laboratories for twenty-seven years. Most of her training relating to DNA identification has been through practical application as opposed to educational seminars. She stated the Coroner's office has conducted DNA identification procedures for five years and has handled thirty-five hundred cases in that time. She has been qualified to testify as an expert witness in court on prior occasions.
Appellant objected to Ms. May's qualifications in relation to DNA identification, but the court overruled his objection. Ms. May then testified generally about polymerase chain reaction ("PCR") typing, as opposed to RFLP typing, in DNA analysis. She opined, after comparing the DNA left at the scene with the sample provided by appellant, that the two samples were consistent. She stated that the markers found in both samples would be found in one in 1,606 in the black population, one in 19,409 in the caucasion population, and one in 6,992 in the hispanic population.
A review of the record reveals no testimony that Ms. May, individually, was qualified to render an opinion on DNA evidence. Although she testified she has a Bachelor of Science degree in Medical Technology, she did not state that this degree entailed education in DNA analysis. Moreover, she testified that the Coroner's Office conducted thousands of DNA tests, but she did not testify that she was involved in those tests. She testified that she worked primarily with "blood," but she did not testify that she performed DNA tests on the blood with which she worked. Finally, even though she stated she has been qualified as an expert in court before, she did not state that she was qualified as an expert in DNA analysis. Resultantly, it was an abuse of discretion for the court, on this testimony, to qualify Ms. May as an expert in DNA.[1]
Removing the DNA evidence from this case would have a great impact on the determination of appellant's guilt or innocence. The DNA evidence is the only evidence directly tying appellant to the victim and her apartment. The victim was unable to identify appellant as her assailant. Even though appellant's fingerprints were found on the items discovered in a dumpster near the victim's apartment, the victim did not testify that the items that contained appellant's fingerprints removed from the dumpster were hers or were in her apartment before the incident. As will be discussed infra, this deficiency in testimony does not render the actual items inadmissible; however, there is no testimony from one with personal knowledge that connects the items to the victim or the victim's apartment on the day of the incident. The jury could draw an inference from the proximity of the items, some of which contained the victim's name and her mother's name, to the victim's apartment, that they were hers and were in her apartment when the incident took place. But, this inference is by no means certain. We conclude the error committed by the trial court in admitting the DNA testimony by Ms. May was prejudicial because we cannot say the outcome of the trial, without the DNA evidence, would clearly have remained the same, and because our confidence in the verdict has been undermined.
The second assignment of error is sustained.
Although it is now rendered moot by our disposition of the second assignment of error, we will address appellant's third assignment of error; in which appellant claims the trial court erred in admitting certain unauthenticated evidence. Specifically, appellant challenges the admission of three photographs of items found in a dumpster near the victim's apartment (Exhibits 10, 11, and 12) and the admission of the actual items found in the dumpster (Exhibits 15, 15-A-1, and 16). He contends the victim did not identify the items in the dumpster as those belonging to her. We would note that appellant did not object to the testimony that appellant's fingerprints were found on the items in the dumpster, and appellant does not raise that issue in this appeal.
Appellant correctly asserts that all physical evidence must be authenticated before it may be admitted into evidence. Evid.R. 901. To authenticate evidence, a witness must be produced who will testify that the item sought to be admitted is what it is claimed to be. Evid.R. 901(B)(1).
For photographs, a witness must testify that he or she has personal knowledge of the subject of the photograph and that the photograph is a fair and accurate representation of its subject.State v. Hannah (1978), 54 Ohio St.2d 84, 88; State v. Strock
(Sept. 25, 1998), Trumbull App. No. 97-T-0077, unreported, at 9. Exhibits 10, 11, and 12 are photographs of items found in a dumpster near the victim's apartment. Patrolman Donald Miller and Sergeant Ronald Piatt testified that they looked in the dumpster when they arrived on the scene and that the photographs fairly and accurately represent what they saw in the dumpster. No more was required to authenticate the photographs.
The remaining exhibits were the actual items recovered from the dumpster. Again, Patrolman Miller and Sergeant Piatt testified at trial that the items in those exhibits were the ones found in the dumpster near the victim's apartment. For the purposes of establishing the items introduced in court were those found in the dumpster, no more was required to authenticate them.
Appellant seems to claim that the victim must testify that the items were hers before they may be admitted. Although, as discussed previously, it would be preferable from the state's perspective to have the victim testify as to her ownership of the items, it was not necessary to authenticate them as the itemsfound in the dumpster. The jury was free to conclude that the items found in the dumpster, some of which displayed the victim's name or her mother's name, did or did not belong to the victim.
Additionally, the items were not necessary to establish appellant's guilt on either the rape charge or the aggravated burglary charge. A conviction for rape requires proof that the defendant engaged in unconsensual sexual conduct with the victim. R.C. 2907.02(A)(2). A conviction for aggravated burglary requires proof that the defendant trespassed in an occupied structure with the purpose to commit a felony when either the offender inflicts, attempts, or threatens physical harm or the occupied structure is a habitation in which a person is or is likely to be present. R.C. 2911.11(A). The items found in the dumpster were not essential to prove any element of either charge, but they were relevant in proving appellant was in the victim's apartment at the time of the incident.
The third assignment of error lacks merit.
In accordance with the foregoing, the judgment of the trial court is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion. _________________________ JUDGE ROBERT A. NADER
FORD, P.J.,
O'NEILL, J., concur.
[1] We would note, however, that the fact that most of Ms. May's claimed expertise came not from formal education, but from practical application, would not render her incompetent to give an expert opinion. In fact, Evid.R. 702 recognizes that expertise may be gained through experience.